IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANGELA S. ADAMS,
      Plaintiff,

v.                                  Case No.: 3:14cv407/MCR/EMT

HAROLD POOL, in his
individual capacity as an
Escambia County Sheriff 's Deputy,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Plaintiff's Motion for Sanctions for Concealing Evidence (ECF No. 33).  The motion was referred to the undersigned for a Report and Recommendation as to disposition of the motion and appropriate sanctions, if any (ECF No. 34).  Defendant Harold Pool and former Defendant Sheriff David Morgan filed a response to the motion (ECF No. 38).

      Plaintiff asserts in her motion that Defendants and/or their attorney failed to provide her with certain documents during discovery that were initially in the possession of the Florida Sheriff's Self Insurance Fund but were subsequently forwarded to counsel for Defendants.  Plaintiff further provides that, had she received these documents, it might have caused her to alter her response to Defendant Pool's currently pending motion for summary judgment and might have changed her earlier decision to stipulate to the dismissal of Defendant Morgan from this action.  So that Plaintiff could have the opportunity to review these discovery documents, the court ordered Defendants to disclose them (ECF No. 39).  Once the documents were reviewed by Plaintiff, the court ordered her to file a response that addressed their import or relevance to the litigation of this case.  Plaintiff responded that the documents would have affected her response to the summary judgment motion but would not have altered her decision to stipulate to the dismissal of Defendant Sheriff Morgan (ECF No. 45).  On October 9, 2015, a hearing was held on the matter, during which counsel for Plaintiff, J. Alistair McKenzie, and counsel for Defendants, Lisa Truckenbrod, addressed the court.

The essential facts of the case are as follows. Plaintiff filed this action based upon an alleged violation of her civil rights in 2011 when she was arrested and detained overnight in the Escambia County Jail on a charge of cocaine possession. The prosecution subsequently filed a *nolle prosequi* dismissing the charge. Although not clearly provided, it would appear that the impetus behind the prosecutor's decision was a video recording of the incident which evidently showed that the cocaine in question was never possessed by Plaintiff. By court order issued in 2013 and at Plaintiff's request, the sheriff's office was directed to expunge all documents related to Plaintiff's criminal case; however, copies of the documents that had been sent to the Florida Sheriff's Self Insurance Fund ("the Fund") in 2011 were not expunged.[1] When the instant case commenced in 2015, the Fund sent its case file to counsel for Defendants, such file containing documents that were ordered expunged, including documents that are the subject of the instant motion for sanctions. Thus, it is evident that these documents were in defense counsel's possession since early in this litigation, and counsel does not contest that she possessed them during the time that Plaintiff proffered her discovery requests.

Plaintiff's civil rights complaint contains claims of false arrest, malicious prosecution, and an excessive force claim which Plaintiff later voluntarily dismissed (ECF No. 24). During the discovery period in January of 2015, Plaintiff proffered generalized requests for production of documents on Defendants Pool and Morgan, including requests for Arrest Reports, Incident Reports, Blue Team Reports, Booking Documents, Probable Cause Affidavits, Supplemental Statements or Reports or other documentation related to the incident, documents providing names of any people present at the scene of the arrest, and documents reflecting any form of contact between the Plaintiff and Defendants (ECF No. 33 at 65-66, 73-77 (Exs. H, I)). To each of these requests, Defendant Pool responded that he had no documents "in his possession, custody, or control" (ECF No. 33 at 65-66 (Ex. H)), while Defendant Morgan responded that the documents had "been expunged in accordance with §943.0585, Florida Statutes" (ECF No. 33 at 73-77 (Ex. I)).

---

[1] Both parties reported that a copy of the court's expungement order was found inside the Fund's case file.

Case No.: 3:14cv407/MCR/EMT

Thus, little in the way of discovery relating to the incident was turned over by Defendants, although Plaintiff already had a substantial measure of discovery materials in her possession, as she had retained them even after the expungement order. However, the file that was forwarded to defense counsel by the Fund at the commencement of this litigation contained an "Offense Report" and other documents (*see* ECF Nos. 45 at 7-10, 53) that were not provided during discovery and that Plaintiff now deems relevant.

It is the Offense Report that deserves the most attention because it was drafted by Defendant Pool and directly pertains to the circumstances surrounding Plaintiff's arrest (ECF No. 53). The existence of this report came to light as early as May 5, 2015, during a video deposition of Defendant Pool (ECF No. 32 at 159). At that time, Plaintiff's counsel already possessed a copy of an "Arrest Report," which had also been drafted by Defendant Pool, but not of the Offense Report, and there was evident confusion between the two documents as the deposition progressed:

Q [Mr. McKenzie]. You also completed an offense report related to this arrest; is that correct?

A [Defendant Harold Pool]. Yes, sir.

MR. McKENZIE: That's going to be marked as Exhibit 2. That's the offense report, I believe.

. . .

Q. Would you take a moment to look at it and let me know when you're finished reviewing it?

A. (Witness reviews document.) You also have the offense report?

Q. Yes, sir.

A. Okay.

Q. Is that a true and correct copy of the offense report?

A. Yes, it is.

Q. Okay. Is there anything not in that offense report that should have been mentioned in there?

A. Well, the arrest report is a short probable-cause statement. The offense report gets into more detail.

Q. Okay.

MS. TRUCKENBROD: Can I interject for a second?

THE WITNESS: Yes.

MS. TRUCKENBROD: Did you ask if he also had the offense report.

THE WITNESS: Yes.

MS. TRUCKENBROD: Okay. So just for clarification, is that the offense report?

THE WITNESS: This is the arrest report, this is not the offense report.

MS. TRUCKENBROD: Okay.

THE WITNESS: Two separate documents.

Q. [Mr. McKenzie]. Okay. Do I have a copy of the offense report.

A. Yes, sir.

Q. So let me be clear. This is an arrest report, and you're making --

A. Yes.

Q. -- a difference between the arrest and the offense report.

A. Yes, sir.

Q. I'm actually unaware of an offense report --

A. Okay.

Q. -- so -- so tell me the difference between the arrest report and the offense report.

A. An arrest report is basically a probable-cause statement that a judge is going to look at to say, yeah, you have probable -- you know, the probable cause is there. And this one these are usually -- in most -- you know, can be – are going to be a lot shorter than an offense report. An offense report will be more detailed.

       Now, some are -- some officers will do the offense and the arrest exactly the same. If I have something real short, like a DWLS, they're going to be the same. Something with a little bit more detail, we probably need to look at getting the offense report.

Q. But all those details that would have been in the offense report would also –

A. Will be here too.

Q. And also covered in your deposition that you gave --

A. Should be, yes, sir.

Q. -- in the criminal matter?

A. Should be, yes.

(ECF No. 32 at 171–174 (Ex. C at 13–16)).

As this excerpt reveals, counsel for Defendants attempted to clear up the confusion between the two reports, and naturally in that process spoke to the existence of the Offense Report, which prompted Defendant Pool to explain the difference between the two. Thus, defense counsel's "interjection" tends to demonstrate that she did not intend to conceal the existence of the Offense Report. Furthermore, as defense counsel later explained in correspondence with counsel for Plaintiff:

> As it relates to Harold Pool's testimony relating to the offense report in his deposition of May 5, 2015, Deputy Pool *asked you* if *you* had a copy of the offense report and you indicated that you did. You then asked Deputy Pool if *you* had the offense report and he said yes. Then you said that you are unaware of an offense report. This entire line of questioning was confused and ambiguous and frankly, I did not understand it.

(ECF No. 33 at 29–30 (Ex. A at 3–4)) (emphasis in original, internal citations removed).

Taken together, defense counsel's statements indicate not only that she had no motivation for concealing the Offense Report but that she also was confused as to whether Plaintiff's counsel had possession of the report. To be sure, as is apparent in defense counsel's correspondence, her response to Plaintiff's motion, and her statements to the court at the hearing, there is an express concern that disclosing the documents in question could have legal consequences since those documents had been ordered expunged. Although the parties recognize that the expungement statute, Florida Statutes Section 943.0585, has no express provision that creates legal penalties or allows the filing of civil actions for noncompliance, as defense counsel expressed, there remain concerns that other consequences such as actions for defamation, could result. Regardless of the legal soundness of defense counsel's concerns, it is nonetheless apparent that those concerns derived from an effort to not cause further legal wrongs rather than from any bad faith attempt at concealment. This impression is further buttressed by the fact that, once Plaintiff's counsel did ask about whether additional discovery existed, defense counsel disclosed the existence of the file from the Fund in her response (ECF No. 33 at 29 (Ex. A at 3)).

Moreover, it is evident that counsel for Plaintiff became aware of the Offense Report as early as the May 5, 2015, deposition, yet he did not ask that this document be specifically produced. Amidst the evident confusion over the two reports drafted by Defendant Pool, it was not so unreasonable at that point for defense counsel to have left the matter in the hands of Plaintiff's counsel, particularly in light of the fact that Plaintiff's counsel let the matter lapse at least until the time of the correspondence excerpted above.[2]

Other than the Offense Report, there is little other documentation in the Fund's file that would be relevant to Plaintiff's claims, voluminous as it may be, and Plaintiff acknowledges nearly as much. Plaintiff views as relevant a Witness List, evidently compiled by the prosecutor in her case, that also contained a handwritten notation at the bottom of the page to the effect that there was insufficient evidence of intent to sustain the charge for possession of cocaine (ECF No. 45 at 7). To the extent the prosecutor's notes were discoverable—which seems unlikely because they would appear to be protected under the work-product privilege—they do not support Plaintiff's claims of false arrest or malicious prosecution. The notation sheds no light on the facts and circumstances known by Pool at the time he made the decision to arrest Plaintiff. Plaintiff's argument for relevance seems to stem from the notion that Defendant Pool considered probable cause to still exist even after he reviewed the video footage of the incident and attempted to influence the prosecutor in that regard—a notion whose basis has not been made apparent to the court. As it stands, the prosecutor's note itself does very little to support Plaintiff's claim of malicious prosecution against Defendant Pool, as there is nothing to suggest that the prosecutor's conclusion regarding intent was in any way driven or influenced by Pool other than what Pool had written in his reports in accordance with his normal duties. And, while the court would not begrudge Plaintiff's use of the prosecutor's notation as a vehicle to discover other relevant information, the notation by itself does not herald that the document was worthy of concealment even if defense counsel were so inclined.

---

[2] Counsel for Plaintiff initiated the correspondence with counsel for Defendants on July 2, 2015, stating that he had become aware of the possible existence of undisclosed documents after reviewing the Pool deposition excerpted above and also when he noticed that a separate 2011 deposition of Pool was marked "original" in the copy defense counsel had submitted in support of her summary judgment motion, while his own copy was marked "copy" (ECF No. 33 at 27 (Ex. A at 1)).

It is therefore concluded that neither Defendants nor their counsel acted in a bad faith manner to deprive Plaintiff's counsel of the documents discussed herein. Plaintiff cites to 28 U.S.C. § 1927 as a basis for sanctions against attorneys who "unreasonably and vexatiously" multiply proceedings, but the court does not find that Defendants acted in this manner. Section 1927 "allows district courts to 'assess attorney's fees against litigants, counsel, and law firms who willfully abuse the judicial process by conduct tantamount to bad faith.'" Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1544 (11th Cir. 1993) (quoting Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir. 1991)). This level of abuse and bad faith is not evident in this case.

Nonetheless, Plaintiff has had to file the instant motion and otherwise expend time and effort to obtain documents from the Fund's file to which she is entitled. In relevant part, Rule 37(a)(5)of the Federal Rules of Civil Procedure provides:

> **(A)** *If the Motion is Granted (or disclosure of Discovery is Provided After Filing).* If the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay to the movant's <u>reasonable expenses</u> incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5) (emphasis supplied).[3] Pursuant to this provision, Plaintiff ought to be remunerated for the attorney hours expended to obtain the previously undisclosed discovery. It is appropriate to find that counsel be the payer since it is undisputed that, upon commencement of the litigation, the documents in the Fund's file were forwarded directly to counsel, and there is no indication that either Defendant Pool or Morgan had access to the file or knowledge of its existence.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Plaintiff's Motion for Sanctions for Concealing Evidence (ECF No. 33) be **GRANTED** to the extent that she be awarded reasonable costs and attorney's fees related to filing the Motion, further responding to court orders, and attending the hearing in this matter.

---

[3] Although the tenor of Rule 37(a) is oriented toward failures to respond outright to discovery requests, Rule 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

     2.     That Plaintiff be permitted to file an amended response to Defendant Pool's motion for summary judgment (ECF No. 30) within **TWENTY-ONE (21) DAYS** of the date an order is entered as to the instant Recommendation.

     At Pensacola, Florida, this 15th day of October 2015.

                             /s/ *Elizabeth M. Timothy*
                             **ELIZABETH M. TIMOTHY**
                             **CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

     **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.** <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> **A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**